# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JIMMY L. FLOWERS,                          )
                                           )
        **Plaintiff,**                        )
                                           )            **CIVIL ACTION**
v.                                         )
                                           )            **No. 09-2364-CM**
                                           )
SRKC, LLC,                                 )
*dba* SADDLE RANCH CHOP HOUSE,             )
                                           )
        **Defendant.**                       )
_____ )

## MEMORANDUM AND ORDER

Plaintiff Jimmy Flowers ("plaintiff") brings this action against defendant SRKC, LLC

*doing business as* Saddle Ranch Chop House ("defendant").  This is a personal injury action for

injuries and damages allegedly sustained by plaintiff on July 14, 2007 while riding or attempting to

ride a mechanical bull at Saddle Ranch Chop House.  Plaintiff alleges claims for premises liability,

ordinary negligence, and gross negligence.[1]  This matter is before the court on defendant's Motion for

Summary Judgment (Doc. 10).  For the reasons set forth below, defendant's motion for summary

judgment is granted in part and denied in part.

## I.    Factual Background[2]

On July 14, 2007, plaintiff rode, or attempted to ride, a mechanical bull at Saddle Ranch Chop

House.  When plaintiff was thrown from the bull, he landed on a pipe or conduit that was concealed

---

[1] Although defendant argues plaintiff released it from "any potential liability for Plaintiff's alleged
injuries," the parties only address whether the release signed by plaintiff applies to plaintiff's
ordinary and gross negligence claims.  Therefore the court does not address whether defendant is
entitled to summary judgment on plaintiff's premise liability claim.
[2] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R.
Civ. P. 56.  The court has combined the facts proposed by both parties, and included only those that
are relevant, material, and properly supported by the record.

underneath a mat that was intended to protect riders. Plaintiff suffered permanent injuries from the

incident. Prior to riding the mechanical bull, plaintiff signed an Indemnity Agreement & Release of

Liability, Acknowledgment of Risks & Hazards (hereinafter "Release"). The Release reads as

follows:

**INDEMNITY AGREEMENT & RELEASE OF LIABILITY**
**ACKNOWLEDGMENT OF RISKS & HAZARDS**

**WARNING: THIS DOCUMENT HAS IMPORTANT LEGAL**
**CONSEQUENCES! READ AND UNDERSTAND COMPLETELY**
**BEFORE SIGNING!**

I understand that using or attempting to ride the mechanical bull equipment is an activity which contains certain inherent risks and dangers, that the equipment continually makes sudden, quick movements which **MAY CAUSE DAMAGE TO PROPERTY, OR INJURY OR DEATH TO A RIDER OR BYSTANDER.**

Knowing this, I nevertheless voluntarily assume responsibility for all risks, known and unknown, and **AGREE NOT TO SUE AND HEREBY FOREVER RELEASE AND DISCHARGE** SRKC, LLC. d.b.a. Saddle Ranch Chop House or any successor, its owners, officers, directors, agents, and all employees (herein collectively referred to as: "Released Parties"), **FROM ALL LIABILITES, CLAIMS, DEMANDS OR CAUSES OF ACTION THAT I MAY HEREAFTER HAVE FOR INJURIES AND DAMAGES ARISING OUT OF MY RIDING, ATTEMPTING TO RIDE OR WATCHING OTHERS RIDE THE MECHANICAL BULL EQUIPMENT**, including but not limited to, losses caused by the active or passive negligence of the Released Parties, in consideration for permission to ride the mechanical bull equipment.

I further **RELEASE AND DISCHARGE** the Released Parties**,** insofar as it is possible to do so under the applicable law, **OF ANY DUTY OF CARE WHATSOEVER TOWARD ME**, including for conduct, actions, and activities that I do not foresee, or anticipate at this time.

I further agree that I **WILL DEFEND, IDEMNIFY AND HOLD THE RELEASED PARTIES HARMLESS** against all claims, demands and causes of action, including costs and attorneys' fees directly or indirectly arising from any action, or other proceeding brought by, or prosecuted for my benefit contrary to the terms of this agreement.

I acknowledge that **I AM NOT INTOXICATED; I AM NOT SUFFERING FROM ANY EXISTING BACK AILMENT OR INJURY, OR HEART CONDITION, AND THAT I AM NOT SUFFERING FROM ANY PHYSICAL OR MENTAL IMPAIRMENTS WHICH WOULD AFFECT MY ABILITY TO USE THE EQUIPMENT, OR WHICH MAKES IT MORE LIKELY THAT I MAY BE INJURED BY USING THE EQUIPMENT.** I also acknowledge that **I AM NOT PREGNANT**. I acknowledge that I am over eighteen years of age and that I am competent to sign this agreement and release.

**I ACKNOWLEDGE THAT I HAVE READ THIS RELEASE COMPLETELY AND UNDERSTAND ITS MEANING FULLY AND I AM AGREEING VOLUNTARILY TO BE BOUND BY IT.**

**THIS IS A FULL RELEASE OF LIABILITY. READ IT COMPLETELY BEFORE SIGNING**

Defendant seeks summary judgment on all of plaintiff's claims, arguing that by signing the Release, plaintiff released defendant from any liability due to injuries arising out of riding or attempting to ride the mechanical bull.

## II.   Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.  Discussion

The issue before the court is whether the Release bars plaintiff's negligence claims. The court will consider plaintiff's gross negligence claim first. Plaintiff correctly points out that under Kansas

law, liability for gross negligence cannot be contracted away.[3]  *LDCircuit, LLC v. Sprint Comms. Co.*, L.P., 364 F. Supp. 2d 1246, 1258 (D. Kan. 2005) (recognizing that "any term in a contract that attempts to limit liability for gross negligence or willful or wanton conduct is unenforceable"); *Butler Mfg. Co. v. Americold Corp.*, 835 F. Supp. 1274, 1283 (D. Kan. 1993) ("Kansas law prohibits the enforcement of liability limitation provisions limiting damages for gross negligence and willful or wanton conduct.")  Thus, the Release cannot apply to plaintiff's gross negligence claim and is not a valid defense to the claim.  Defendant's motion is denied with respect to plaintiff's gross negligence claim.

The court will next consider the effect of the Release on plaintiff's ordinary negligence claim. A mentally competent party who has fairly and voluntarily entered into legally valid contract is bound thereby, notwithstanding it was unwise or disadvantageous to him.  *Corral v. Rollins Protective Servs. Co.*, 732 P.2d 1260, 1263 (Kan. 1987).  But contracts exempting a party from negligence are not favored by the law and are strictly construed against the party relying on them. *Belger Cartage Serv., Inc. v. Holland Const. Co.*, 582 P.2d 1111, 1119 (Kan. 1978) (quotation omitted).  Plaintiff argues that the Release does not apply to his ordinary negligence claim because (1) the Release is unenforceable under Kansas law and (2) plaintiff's injuries are outside the scope of the Release.

**A.  Enforceability of the Release**

Under Kansas law, "contractual agreements limiting liability are valid if fairly and knowingly entered into" so long as the agreement is not illegal,[4] unconscionable, or contrary to public policy.

---

[3] To the extent defendant is arguing the facts do not support plaintiff's gross negligence claim, the court finds defendant has not met its burden to establish that it is entitled to judgment as a matter of law.

[4] Plaintiff does not argue that the Release is illegal, thus the court need not address the legality of the Release.

*Corral*, 732 P.2d at 1263, 1271. Additionally, because exculpatory contracts are disfavored by the courts, they will be enforced only when there is no vast disparity in the bargaining power between the parties and the intention to limit liability is expressed in clear and unequivocal language. *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1062 (10th Cir. 1998) (citing *Belger*, 582 P.2d at 1119)). "[T]he Kansas Supreme Court has suggested that so long as '[n]one of the parties . . . involved were neophytes or babes in the brambles of the business world' the court will eschew declaring voluntarily entered-into indemnification agreements void." *Id*. (citing *Kan.City Structural Steel Co. v. L.G. Barcus & Sons, Inc.*, 535 P.2d 419, 424 (Kan. 1975)).

### 1. *Bargaining Power*

Plaintiff argues that there was unequal bargaining power because plaintiff is a driver for Federal Express Freight Services and defendant is a business with restaurants in multiple states. This, however, does not create a vast disparity in bargaining power. The relevant facts of this case are not disputed. Plaintiff is an adult. He was not obligated to ride the mechanical bull. There is no evidence that plaintiff had business or financial pressure to ride the mechanical bull or that it was the only means plaintiff had of filling an important need. If plaintiff did not want to sign the Release, he was free to walk away from the transaction. There is no evidence of any deceptive bargaining by defendant. Because there is no evidence of a vast disparity between the parties in terms of sophistication or bargaining power, the court rejects plaintiff's claim that the Release is void on the ground of unequal bargaining power.

### 2. *Clear and Unequivocal Language*

Plaintiff also contends that the language releasing defendant from liability for its negligence is not expressed in clear and unequivocal language, arguing the language is too general because it "merely refers to 'inherent risks' and the risk of 'sudden, quick movements.'" (Pls.'s Br. at 11.)

Plaintiff is correct that broad and seemingly all-inclusive language is not sufficient to overcome the judicial disfavor of exculpatory agreements, *Zenda Grain & Supply Co. v. Farmland Indus., Inc.*, 894 P.2d 881, 887 (Kan. Ct. App. 1995), but plaintiff ignores the language of the Release that specifically addresses "losses caused by the active or passive negligence of the Released Parties."

The exculpatory clause in defendant's Release is more specific than the limiting clauses in the cases on which plaintiff relies. The hold harmless clauses in those cases did not contain the word "negligence." Instead, those clauses merely used general language limiting liability from "any and all claims." *See, e.g., Johnson v. Bd. of County Com'rs of Pratt County*, 913 P.2d 119, 136 (Kan. 1996) (comparing hold harmless clauses and determining that a general hold harmless clause that did not mention negligence liability did not bar negligence claims but recognizing that a hold harmless clause specifically mentioning negligence liability would bar such claims); *Butters v. Consol. Transfer & Warehouse Co., Inc.*, 510 P.2d 1269 (Kan. 1973) (hold harmless agreement did not show an intention to indemnify against loss resulting from a party's own negligent acts where the agreement did not expressly reference negligence liability); *Shoup v. Higgins Rental Ctr., Inc.*, 991 F. Supp. 1265, 1267 (D. Kan. 1998) (same). Here, the Release clearly and unequivocally expresses intent that the indemnity clause encompass defendant's negligence.

### 3. Unconscionability

The Kansas Supreme Court has identified multiple factors for evaluating whether a provision is unconscionable. *Wille v. SW Bell Tel. Co.*, 549 P.2d 903, 906−07 (Kan. 1976). The following factors are at issue here:

- the use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position;
- inequality of bargaining or economic power;
- a denial of basic rights and remedies to a buyer of consumer goods;

- the inclusion of penalty clauses;
- the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract;
- phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them;
- exploitation of the underprivileged, unsophisticated, uneducated and the illiterate;
- an overall imbalance in the obligations and rights imposed by the bargain; and
- the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect.

After considering these factors, the court finds that the exculpatory agreement in the Release is not unconscionable. First, although the Release is a boilerplate contract drafted by defendant and was offered to plaintiff on a take it or leave it basis, plaintiff was not left in a weaker economic position. As discussed above, there was no business or financial incentive tied to riding the mechanical bull, nor was it the only means plaintiff had of filling an important need. Second, as the court previously explained, there is no evidence of a vast disparity between the parties. Third, plaintiff has provided little argument and no authority for its proposition that the attorney's fee clause makes the Release unconscionable. Fourth, the exculpatory clause was not hiding in fine print or inconspicuously placed. It is in normal typeface on the front page of the Release. *See, e.g., Midwest Concrete Placement, Inc. v. L & S Basements, Inc.*, No. 07-2316-JAR, 2009 WL 1162391, at *5 (D. Kan. Apr. 29, 2009) (upholding normal type-faced exculpatory clause when there was no extreme fine print, no hidden information, and no incomprehensible legalese). Fifth, the phrasing of the clause is clear—it states that the signing party "voluntarily assume[s] responsibility for all risks, known and unknown . . . including but not limited to, losses caused by the active or passive negligence of the Released Parties." Sixth, plaintiff is not underprivileged, unsophisticated,

uneducated or illiterate.  Seventh, there is not an imbalance in the obligations and rights imposed by the bargain.

Finally, the totality of the circumstances surrounding the execution of the contract does not make the Release unconscionable.  Plaintiff contends that the totality of the circumstances suggests that the Release was not fairly and honestly negotiated because, in addition to the arguments above, the Release was presented in an atmosphere of noise, poor lighting, and with pressure to complete the process quickly to keep the line moving.  Plaintiff also relies on the fact that defendant did not point out the exculpatory clause or verbally explain the document.  But plaintiff ignores the fact that he was under no obligation to execute the Release.  According to his affidavit, he was at the establishment for several hours.  Plaintiff could have taken the time to read the Release.  Moreover, failure to read a contract does not entitle plaintiff to get out of complying with its terms.  *Midwest Concrete Placement*, 2009 WL 1162391 at *4−5.

### *4.  Public Policy*

Contracts in contravention of public policy are void and unenforceable.  *Loscher v. Hudson*, 182 P.3d 25, 35 (Kan. Ct. App. 2008).  A contract is void as against public policy when it is injurious to the interests of the public or it contravenes some established interest of society.  *Belger Cartage Serv., Inc. v. Holland Const. Co.*, 582 P.2d 1111, 1118 (Kan. 1978) (citation omitted).  "The paramount public policy is that freedom of contract should not be interfered with lightly."  *Wichita Clinic, P.A. v. Louis*, 185 P.3d 946, 951 (Kan. Ct. App. 2008).  In *Loscher*, the Kansas Court of Appeals turned to the Restatement (Second) of Contracts § 178 (1979) for guidance, noting:

> (1) A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.
> (2) In weighing the interest in the enforcement of a term, account is taken of
> > (a) the parties' justified expectations,

> (b) any forfeiture that would result if enforcement were denied, and
> (c) any special public interest in the enforcement of the particular term.
> (3) In weighing a public policy against enforcement of a term, account is taken of
> > (a) the strength of that policy as manifested by legislation or judicial decisions,
> > (b) the likelihood that a refusal to enforce the term will further that policy,
> > (c) the seriousness of any misconduct involved and the extent to which it was deliberate, and
> > (d) the directness of the connection between that misconduct and the term.

*Loscher*, 182 P.3d at 35 (quoting Restatement (Second) of Contracts § 178 (1979)).

Here, plaintiff argues that an exculpatory clause such as this one violates public policy because it allows defendant to escape liability for dangers that are hidden from the public but of which defendant is aware. After weighing the factors considered by the Kansas Court of Appeals, the court disagrees with plaintiff's analysis. As discussed above, the exculpatory clause was expressed in clear and unequivocal language and was on the front page of the Release in normal type-print. Based on the language in the Release, the parties should expect the exculpatory clause to limit defendant's negligence liability. If enforcement of the clause was denied, the parties would be losing their right to freely negotiate the terms of the exculpatory clause. Any special public interest in the enforcement of the term does not outweigh the parties' rights to freely contract regarding private matters—riding a mechanical bull is not a matter of public importance. *See, e.g., Wolfgang v. Mid-American Motorsports, Inc.*, 898 F. Supp. 783, 787 (D. Kan. 1995) (recognizing that voluntary sporting competitions are not matters of public importance). Further, there is no policy here that is manifested through legislation or judicial decisions. Although the alleged deliberate misconduct—defendant's knowledge of the danger—could be evidence of negligence or willful or wanton conduct by defendants, it does not render the exculpatory clause void against public policy.

**A.  Scope of the Release**

Plaintiff argues the injuries he received as a result of falling off of the mechanical bull are not within the scope of the Release because they were not obtained while riding the mechanical bull. Plaintiff contends that the Release does not cover injures due to falling or being thrown and landing on a concealed object of which defendant was aware but did not disclose to him. This argument is similar to plaintiff's public policy argument, and the court finds it as unpersuasive.

The Release is written to include "using or attempting to ride the mechanical bull equipment." Dismounting the bull is an inherent part of riding, or attempting to ride, a mechanical bull. Falling off of the mechanical bull or being thrown from it are anticipated inherent risks when riding a mechanical bull. Defendant's active knowledge of a particular hazard—an allegedly concealed pipe—is not outside the scope of the explicit language of the Release. Instead, it may be evidence of defendant's willful or wanton conduct, which cannot be limited through an exculpatory clause. The release clearly and unequivocally limits defendant's negligence liability for inherent risks and dangers associated with using or attempting to ride the mechanical bull equipment. Injuries that occur from dismounting the mechanical bull are those types of inherent risks and dangers.

In sum, the court finds that the Release is valid and enforceable against plaintiff's ordinary negligence claim. Plaintiff's gross negligence and premise liability claims remains pending.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 10) is granted in part and denied in part.

Dated this <u>30th</u> day of March 2010, at Kansas City, Kansas.

<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
**United States District Judge**